ELLIS, Judge:
Jimmy Stevens was discharged on June 7, 1977, from his position as Family Services Eligibility Worker with the Division of Family Services of the Louisiana Health and Human Resources Administration. The letter of dismissal reads as follows:
“Pursuant to the authority contained in Civil Service Rule 12.3, you are hereby advised that you are being separated from your position as a Family Services Eligibility Worker, effective at 4:30 p. m., on the day you receive this letter. The reasons, as outlined below are:
“1. Your work performance has been and is unsatisfactory.
“2. Insubordination and destruction and disposal of case record materials.
“Unsatisfactory Service Rating — On September 23, 1976, a conference was held with you to discuss your high number of out-of-conformity applications, lack of use of available controls and lack of organized work plan. A plan was devised and implemented to aid you in achieving prompt and valid disposition of applications.
“When this failed, another conference was held November 3, 1976, in which it was decided that your regular full assignment of 24 applications would be reduced for November, 1976, to 12 applications; to 18 applications for December, 1976; then resume the full assignment of 24 applications in January, 1977. Confirmation of this conference is attached. “When your work showed no improvement, you were rated unsatisfactory and placed on a supervisory plan in March, 1977. Copies of the Annual Service Rating and Supervisory Plan are attached and made a part of this letter. Periodic conferences, especially those of April 5 and April 19, 1977, indicate that the objectives of the supervisors plan are not being met. Specifically, on April 5, 1977 you accused your supervisor of being dishonest and otherwise tried to impugn her character. Resistance to instructions given in the conference of April 19, 1977 culminated with the activities outlined below.
“Insubordination and Destruction and Disposal of Case Records — In a weekly conference on April 19, 1977, you were asked to sign all forms 51 S/M in your office and file them in the appropriate case records and return the records to case files in preparation for a desk review scheduled for April 26, 1977.
“On April 25, 1977, 68 pieces of case record forms and correspondence belonging to some 58 cases were retrieved from your waste paper basket. A list of cases and materials is attached and made a part of this letter. Some of this material had been torn up and had to be taped together to ascertain its relatedness to the case records. As you are well aware of policies and procedures, you knew or should have known that the majority of the information you tore up and/or threw away was pertinent and necessary for client records. Because of your experience, your failure to follow instructions is considered insubordination.
*968 “Because all effort to assist you to attain a satisfactory level of performance have failed; and because your insubordinate acts of deliberate destruction and disposal of case record materials cannot be tolerated, it has been determined to be in the best interest of this department and the public it serves that you be separated from your position with the Office of Family Services.”
Mr. Stevens appealed his dismissal to the State Civil Service Commission, which, after a full hearing, rendered the following opinion:
“Appellant testified, on cross examination, generally denying the allegations of the annual evaluation for the period ending March 31, 1977 and the letter of dismissal dated June 1, 1977.
“Ms. Lazelle Alexander testified relative to a conference with appellant on September 23,1976, and November 3,1976 at which times it was pointed out that he had an exceptionally large number of applications pending and several cases that had pended out of conformity anywhere from 71 to 109 days. She also testified as to a discussion on February 14, 1977 and appellant’s failure to fully comply with agreements reached in that conference; that on March 3,1977 another conference was held at which time appellant was placed on a supervisory plan; that subsequent conferences on April 5 and 19,1977 revealed that the supervisory plan was not being met; and that on April 19,1977 appellant was asked to file various forms in appropriate case records in preparation for a desk review scheduled for April 26, 1977.
“Ms. Sybil Dupre, Supervisor, testified that on April 25, 1977 some 68 pieces of case record forms and correspondence belonging to some 58 cases were found in appellant’s wastepaper basket; that the majority of the documents found were pertinent and necessary to clients’ records; and, that appellant had been told to prepare for a desk review.
“Appellant produced several witnesses, John Davis, Marva Jackson and Lee Mitchell who testified as to their work loads and their lack of knowledge of a “Form Manual”.
“None of appellant’s witnesses’ testimony refuted allegations of the letter of removal. The supervisors had testified as to a source reference entitled “Form Manual”. “The appeal is dismissed.”
Mr. Stevens has appealed to this court. A transcript of the testimony taken at the Commission’s hearing could not be furnished because of a malfunction of the recording equipment used at the hearing. In order to complete the record on appeal, the parties stipulated that the facts found by the commission in its opinion are true, and to the following statement:
“The following are the facts surrounding termination of appellant, Jimmy Stevens, as agreed upon by counsel for appellant and the appointing authority. Every attempt was made to stay within the purview of testimony entered into the record at the hearing.
“From the basis of the decision rendered by the Commission on September 20, 1978, the following factual addenda are submitted:
“1) In the opinion it was stated that “he (appellant) disagreed with the findings leading to his dismissal.” By way of delineation of that statement, it is agreed that appellant testified that he felt his work was comparable to other workers similarly situated. Additionally, appellant produced several witnesses who testified as to their workloads. “2) It is an agreed upon fact that the September 23, 1976 meeting took place but with the following divergent perceptions by appellant and witnesses for appointing authority:
“a) Appellant perceived the purpose of this meeting to be basically a discussion of why a follow-up on several cases, ordered by Ms. Sybil Dupre, a supervisor of appellant, had not taken place. Appellant testified that Ms. Alexander, his immediate supervisor, had never given him the cases to undertake the task.
*969 “b) Witnesses for the authority perceived and testified that the basic purpose of this meeting was to discuss with appellant his high number of out of conformity applications, lack of use of available controls, and lack of an organized work plan.
Testimony was adduced from all parties as to these perceptions.
“3) It is an agreed upon fact that the meeting of November 3, 1976 took place with the express purpose of reducing appellant’s caseload. It is further agreed that appellant was being singled out, but with diverging perceptions as to why appellant was accorded this treatment. Appellant avers and testified that he felt his workload and productivity were commensurate to that of his co-workers and that this treatment was unjustified. Witnesses for the appointing authority testified that appellant was being singled out in an effort to improve his productivity. “4) It is an agreed upon fact that appellant was placed on a supervisory work plan and that he felt he made good faith efforts to comply with the provisions of the plan. In spite of his good faith efforts, appellant testified that he felt that consistent efforts to assist him were not forthcoming from his immediate supervisor, Ms. Lazelle Alexander. This lack of consistent effort was manifested in such ways as nonappearance at scheduled conferences with appellant, etc. Appointing authority avers that some meetings with appellant were missed, but that there was substantive cause for each nonappearance. Additionally it was at this time that Ms. Alexander requested, received, and reviewed several uncompleted cases being handled by appellant. When they were returned, attached thereto were Pad Forms 1170, which were never utilized as a matter of procedure prior to this. Upon inquiry as to why these forms were being utilized, appellant was informed that they were merely a teaching tool. However, when appellant was further disciplined these same forms were part of the evidence substantiating the charges. This was the basic rationale for appellant’s charge of dishonesty. Appointing authority avers that appellant’s charge is without foundation due to the fact that there was never any manifest intent to deceive appellant, but, in fact, these forms were being utilized as a teaching tool when they were employed.
“5) Appellant testified that he placed no indispensable papers in his waste can. Further, it is an agreed upon fact that appellant had no knowledge of a forms manual, which would have delineated which forms were indispensable and which were not, and hence, appellant had no specific knowledge of which forms were disposable and which were not.
Finally, testimony was adduced at the hearing as to the preceding facts.”
As we appreciate the stipulations, the witnesses for the appointing authority testified to facts which, uncontradicted, were sufficient to prove charges made in the letter of dismissal. The testimony of the witnesses produced by the appellant was found by the Commission not to contradict that of the witnesses for the appointing authority. Although the stipulation indicates that there were conflicts in the testimony of the two sides of the case, or in the interpretation of that testimony, these conflicts were apparently resolved by the Commission in favor of the appointing authority-
In order to reverse the finding of the Commission we would have to accept appellant’s version of the case, and reject the testimony of the witnesses for the appointing authority. Such a determination involves considerations of veracity and weight of evidence, which can better be made by the body which heard the witnesses testify, particularly in the absence of a full transcript. The record presented does not justify a reversal of the ruling of the Commission.
*970 The findings of the Commission are therefore affirmed.
AFFIRMED.